UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
DANIEL RUSSELL,

                 Plaintiff,

     -against-

COUNTY OF NASSAU, NASSAU
COUNTY COMMISSION OF HUMAN
RIGHTS, TODD GOLDFARB, in his
individual and official capacity, Director
of Personnel of Nassau County
Commission on Human Rights, NASSAU
COUNTY CIVIL SERVICE
COMMISSION, KARLE KAMPE, in his
individual and official capacity, Commissioner
of Nassau County Civil Service Commission,

                 Defendants.
--------------------------------------------------------X

**MEMORANDUM & ORDER**
Civil Action No. 07-1686
(DRH)(AKT)

**APPEARANCES:**

**Law Offices of Frederick K. Brewington**
Attorneys for Plaintiff
50 Clinton Street, Suite 501
Hempstead, New York 11550
By:    Frederick K. Brewington, Esq.

**John Ciampoli**
**Nassau County Attorney**
Attorney for Defendants
One West Street
Mineola, New York 11501
By:    Peter J. Famighetti, Esq.

**HURLEY, Senior District Judge:**

      Plaintiff Daniel Russell ("Plaintiff" or "Russell") commenced this action against

defendants County of Nassau (the "County"), Nassau County Commission of Human Rights (the "HR Commission"), Todd Goldfarb ("Goldfarb"), in his individual and official capacity, Director of Personnel of Nassau County Commission on Human Rights[1], Nassau County Civil Service Commission ("Civil Service Commission"), Karle Kampe ("Kampe"), in his individual and official capacity, Commissioner of Nassau County Civil Service Commission (collectively "Defendants") alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), Title VI, 42 U.S.C. § 2000d, the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. (the "FLSA"), New York State Human Rights Law, N.Y. Exec. Law § 296, et seq. ("NYSHRL"), 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1985, Equal Pay Act of 1963, as amended and for various state causes of action.  Presently before the Court is Defendants' motion for summary judgment.  For the reasons set forth below, the motion is granted in part and denied in part.

### Factual Background

The following facts are taken from the parties' 56.1 statements, to the extent properly supported by admissible evidence, and are undisputed unless otherwise noted.

<u>The Civil Service Commission</u>

The Nassau County Civil Service Commission is an agency, created pursuant to the County's Administrative Code, responsible for overseeing that the municipal agencies in Nassau County comply with and abide by the New York State Civil Service Law.   It administers the

---

[1] The Complaint so names Goldfarb.  In fact, he has never been so employed.  Rather, from September 1999 to November 2001, Goldfarb was Nassau County Director of Personnel.

provisions of the New York Civil Service Law with respect to the offices and employments in the classified service. *See* N.Y. Civil Serv. Law § 17. [2] Under New York law, public employment is either classified or unclassified. *Id.* § 35. Classified employees are further divided into four categories: exempt, non-competitive, labor and competitive. *Id.* § 40. Positions which are classified as competitive require the administration of an examination. Pursuant to the grades received and certain other criteria met by the individuals taking the examination, the Commission creates and certifies a list of eligible candidates for a particular competitive job title.

Kampe is, and at all relevant times was, the Executive Director of the Civil Service Commission. Nassau's Civil Service Commission has seven division: recruitment, classification, qualification, examination, placement, county transactions, and municipal transactions. The recruitment division administers all civil service examinations and is responsible for preparing examination announcements and reconciles examination results from the State Civil Service Commission prior to the establishment of eligible lists. The classification division defines all positions according to the duties to be performed by incumbents of those positions and establishes training and experience requirements for these positions. The qualification division reviews all applications for both examination and employment. The examination division plans, organizes, and supervises special and standard testing programs, determines areas appropriate for written tests, and reviews test items for subject matter based on standards and appropriateness of content. The placement division establishes, maintains and certifies eligible lists and is also

---

[2] In Nassau County "all officers and employees of the [C]ounty and of all departments, offices, institutions and agencies thereof, except special district employees, [are] members of the classified service except" elective officials, heads of departments (including the members of all boards and commissions), election officers, employees of the Board of Supervisors, and employees in the office of the County Executive. Nassau County Charter § 1304.

charged with verifying that competitive class appointments are made in accordance with Civil Service law.

Under New York law, "before any new position in the service of a civil division shall be created or any existing position in such service shall be reclassified the proposal therefor, including a statement of the duties of the position, shall be referred to the municipal commission having jurisdiction and such commission shall furnish a certificate stating the appropriate civil service title for the proposed position or the position to be classified. Any such new position shall be created or any such existing position reclassified only with the title approved and certified by the commission." N.Y. Civ. Serv. Law § 22.

<u>Plaintiff's Employment with the County</u>

Plaintiff is an African-American male who began his employment with the County in November 1994 as a "Human Relations Representative I" with the County's HR Commission. Human Relations Representative I is within the "graded" salary plan and Plaintiff was placed at Grade 11 Step I with a starting salary of $32,375.00.   Positions within the graded salary plans receive step increases each year.  For positions represented by the Civil Service Employees Union,  the collective bargaining agreement between the County and that union determines whether a position is within the graded salary plan.  Salary increases for ungraded positions are not automatic.  They must be recommended by the Department head and approved by the County Executive; salary requests for ungraded positions are "political" matters.

In January of 1996 Plaintiff was promoted to the position of Director of Job

Development.[3]  Plaintiff remained in that position until May 27, 2008 when he was appointed

Acting Executive Director of the HR Commission.   Director of Job Development is an exempt,

ungraded position that under the terms of the relevant collective bargaining agreement is not

entitled to step increases.[4]  The relevant bargaining agreements[5] do provide, however, for certain

yearly percentage increases for, inter alia, "the salary of ungraded employees in the negotiating

unit."[6]  (Ex. H to Famighetti Decl. at ¶ 25.1; Ex. I to Famighetti Decl. at ¶ 25-1.1.)  Upon

appointment to the Director position, Plaintiff's salary was significantly higher than the salary he

received as a Human Relations Representative I.  Plaintiff maintains that at the time of his

appointment to the director position he was unaware that the position was ungraded and not

within the step plan and that he would not receive automatic contractual yearly increases.[7]

According to Plaintiff, it was not until January 1997, when he did not receive a step increase, that

---

[3]  Upon his appointment to the position of Director of Job Development, Plaintiff did not take a leave of absence from his prior position, Human Relations Representative I, creating a vacancy in the latter position.  A new employee was eventually hired to fill the Human Relations Representative I position vacated by Plaintiff.

[4]  The position of Director of Job Development has been an ungraded position since it was established on June 25, 1970.

[5]  The collective bargaining agreements ("CBA") submitted on the instant motion (Exs. H and I to Famighetti Decl.) cover the periods January 1, 1998 to December 31, 2002 (Ex. H) and January 1, 2003 to December 31, 2007 (Ex. I).  The collective bargaining agreement in effect for 1996 and 1997 were not provided to the Court.

[6]  These percentage increases also apply to hourly wage rates and each grade and step of the graded salary plans, see Ex. H to Famighetti Decl. at ¶ 25.1; Ex. I to Famighetti Decl. at ¶ 25-1.1, and therefore appear to be in the nature of cost of living increases.  Indeed, Plaintiff refers to them as such.

[7]  Plaintiff admits, however, that he never asked if the position was within the graded salary plan.  Pl.'s Response to Defs.' 56.1 Statement at ¶ 32.

he became aware that the position was ungraded. After complaining to his then supervisor ("Rice"), Plaintiff received a seven thousand ($7,000) dollar raise in February 1997.

Sometime between January and May 1998, when he again did not receive a yearly step increase, Plaintiff discussed with his supervisor the possibility of being returned to his Human Relations Representative I position. Because he had not taken a leave of absence from the position, Plaintiff could not automatically be placed back into that position but had to be appointed from a competitive list for the title. In or about February 1999, Plaintiff submitted a request to take the promotional test for Human Relations Representative II but was told by a civil service representative that he could not be considered for promotion because he did not hold the position of Human Relations Representative I. Plaintiff was, however, permitted to sit for the open competitive examination for Human Relations Representative II position. Plaintiff did very well on the examination and was placed on the list for open competitive positions for Human Relations Representative II. (Russell Dep. at 154- 166.)

In January 2000, Plaintiff submitted an application to take the open competitive examination for the position of Cultural Affairs Specialist. The application was rejected by Civil Service Commission on the grounds that he failed to provide information showing he had the required one year experience and the experience plaintiff claimed was gained "out of title." Plaintiff appealed the determination by letter dated March 1, 2000, but the appeal was denied. The letter rejecting the appeal stated:

> Your application was rejected because you did not show that you had the required one-year experience conducting cultural or recreational services, events or programs. In order to qualify, you would have to have experience for example, in an area where you planned or conducted programs such as concerts, dramatic

> presentations, lectures or similar activities, As Director, Job
> Development Center, your duties do not include responsibility for
> such work. Your duties, as listed in the class specification for your
> title, include supervising, planning, and directing the operation of
> the Job Development Center. In addition, you may perform duties
> related to those listed in the specification. New York Civil Service
> Law prohibits the acceptance of such out-of title experience.

(Ex. AA to Famighetti Decl.)

Plaintiff contends that his experience was not gained out of title and that in any event

Kampe and the Civil Service Commission had discretion to approve his appeal but did not, and

Kampe's reasons for rejecting the application were a pretext for race discrimination.

In 2000, Plaintiff also filed an application with the Civil Service Commission to take the

examination for Assistant Housing Project Manager, a position with the Hempstead Housing

Authority. The application was approved in or about February 2000.

As early as 1999, Plaintiff believed he was not getting raises because he was being

discriminated against, not by his supervisor, Mr. Rice, but by Mr. Rice's "superiors." However,

in a memorandum to Rice dated August 18, 1999, Plaintiff, while expressing his frustration at

not receiving the salary he felt he deserved, makes no claim that the lack of raises was due to

racial discrimination. *(See* Ex. HH to Famighetti Decl.)

In 2001, Renaire Frierson ("Frierson") was appointed Executive Director of the HR

Commissions, replacing Rice as Plaintiff's supervisor. On April 9, 2001, Frierson wrote to

Kampe requesting "assistance" regarding Plaintiff:

> [Plaintiff] has been with the Commission since 1994. From 1994
> to present, [he] has only received a $5,000 salary increase. [He] is
> not in a graded salary plan, even though his title is <u>not</u> one of the
> listed exempt titles. In the interest of preserving the integrity of the
> Human Rights Commission and keeping valuable employees,

> request is hereby made for a title change and change in position
> which would place [Plaintiff] in the graded salary plan and give
> him a salary increase in line with his current director status and
> demonstrated supervisory ability.  Perhaps, this will ensure that he
> remains with the Commission. [Plaintiff] should be in the $60,000
> salary range.  Enclosed is a resume, job description for his current
> title and the job specifications for several titles that seem suitable
> for [him].  Please review same.

(Ex. DD to Famighetti Decl.)   Kampe responded by Memorandum dated April 20, 2001, stating

in pertinent part: "The information that we received describing Mr. Russell's present duties was

reviewed, and it appears that his current title, Director, Job Development Center, is appropriate

for the duties being performed.  The Commission does not decide whether a position is in the

graded or ungraded salary plan.  In this case, the salary increases are contractual.  We trust this

answers the questions raised."  (*Id.*)

On or about April 30, 2001, three grievances were filed on Plaintiff's behalf pursuant to

the CBA.  Two of the grievances alleged that the County violated the terms of the CBA when it

"work[s] [Plaintiff] Out of Title, by requiring [him] to accomplish duties well beyond [his] job

description.  Additionally the terms of the contract are not being adhered to uniformly."  (Ex. V,

at p. 1 & 2, to Famighetti Decl.)   The third grievance alleged that section 25.0 of the CBA was

being violated when the County failed "to increase [Plaintiff's] salary by <u>not</u> moving [him] up in

graded salary plan, and not giving [him his] January, 1998 - by 2%, July 1, 1999 - by 3%,

January 1, 2000 by 4%, January 2001 by 2% increases.  Additionally, the County fails to

administer the terms of the agreement uniformly."  (*Id.* at p.3.)  The grievances were referred to

advisory arbitration.   The CSEA drafted a stipulation dated December 19, 2001 (the

"Stipulation"), settling the grievances which provided that Plaintiff would be placed in Grade 16,

step 5 effective 12/2000 and moved up to step 6 on 1/2001, as well as be paid "retro $ owed." (Ex. M to Famighetti Decl.)   Frierson signed the stipulation.   It was not, however, put into effect.

Frierson sent correspondence dated December 19, 2001 to Goldfarb requesting that he make "the necessary changes to [Plaintiff's] personnel records" in accordance with the Stipulation.   At that time Goldfarb, however, was no longer Director of Personnel and therefore had no authority over the matter.

Frierson also requested Kampe implement the Stipulation. Kampe testified that he could not address Plaintiff's situation and implement the Stipulation without the recommendation of Labor Relations.  He also testified that the implementation of the Stipulation was not possible because it is a legislative issue to assign a position a grade.

Frierson also included funds for a salary increase and back pay for Plaintiff in her proposed budgets for the years 2004, 2005 and 2006.[8]   Funds for this purpose were not approved.  Frierson did not include a similar request in the proposed budget for 2007 as, according to Frierson, she was told on August 11, 2006 by William Cunningham, counsel to the County Executive, that funds for a salary increase for Plaintiff or funds for his back pay should not be included in the HR Commission budget.

On or about August 26, 2005, a breach of contract action was filed in New York State Supreme Court on behalf of the CSEA and Plaintiff seeking to enforce the Stipulation.  On cross-

---

[8] Plaintiff contends that the proposed budgets of the Commission on Human Rights for budgetary years 2001 through 2007  included funds for his salary increase and back pay as set forth in the Stipulation.  See Pl.s' 56.1 at ¶ 119.  However, the admissible evidence cited in support of the contention only supports that said funds were included in the proposed budgets for the years 2004, 2005, and 2006.

motions for summary judgment, summary judgment was granted in favor of the County, the court holding that "[t]he absence of a signature from a representative of the Office of Labor Relations, together with Frierson's acknowledgment that she alone cannot create a binding stipulation, is fatal to this contract, as a matter of law . . . . Not only did the Office of Labor Relations not sign the Stipulation, but there is no evidence that is was so ordered by a mediator." (Ex. N to Famighetti Decl.)

Plaintiff did not file a Charge of Discrimination as required by Title VII until the fall of 2006, the exact date being in dispute. Plaintiff claims that he filed an initial complaint with the New York State Division of Human Rights (NYSDHR) on October 6, 2006 and signed and cross-filed a revised complaint with the NYSDHR/EEOC on November 8, 2008. Defendants claims no charge was filed until November 20, 2006. For purposes of this motion, the Court will presume the charge of discrimination was filed on the earliest of the dates in contention, to wit, October 6, 2006.[9]

On December 11, 2006, a right to sue letter was issued. This action was commenced on April 23, 2007.

On May 27, 2008, Plaintiff was appointed Interim/Acting Director of the HR Commission.

Additional facts and factual contentions shall be addressed as appropriate.

---

[9] In support of his dates, Plaintiff submits Ex. WW to the Brewington Affidavit. That exhibit includes, inter alia, (1) a letter to the EEOC dated October 6, 2006; and (2) a Charge of Discrimination purportedly signed by Plaintiff and dated November 8, 2006 containing an EEOC Charge Number. Plaintiff also submitted a Notice of Charge of Discrimination from the EEOC to Nassau County dated November 20, 2006.

**Discussion**

## I. Summary Judgment Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates both the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Major League Baseball Props., Inc. v. Salvino, Inc.,* 542 F.3d 290, 309 (2d Cir. 2008); *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009); *Coppola v. Bear Stearns & Co.*, 499 F.3d 144, 148 (2d Cir. 2007). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *See SCR Joint Venture*, 559 F.3d at 137; *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *See Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Cons. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*,

477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted). Affidavits submitted in opposition to summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show that the affiant is "competent to testify to the matters stated therein." *Patterson v. County of Oneida,* 375 F.3d 206, 219 (2d Cir. 2004) (citing Fed. R. Civ. P. 56(e)). "Rule 56(e)'s requirement that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavit also means that an affidavit's hearsay assertions that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial." *Patterson*, 375 F.3d at 219 (citing *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999)).

When determining whether a genuinely disputed factual issue exists, "a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability," or "the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 254-55. A district court considering a summary judgment motion must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide the district court in its determination of a summary judgment motion. *See Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule

56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *See id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.'" *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587).

In deciding a summary judgment motion, a court must resolve all factual ambiguities and draw all reasonable inferences in favor of the non-moving party. *See Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987). That being said, it is well-established that a non-movant cannot defeat summary judgment with nothing more than "unsupported assertions," *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995), or the allegations in its pleadings. *See Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996); *see also* Fed. R. Civ. P. 56(e). More particularly, although "summary judgment should be used sparingly" in cases where the material fact at issue is the defendant's intent or motivation, the plaintiff must nevertheless offer some "concrete evidence" in his favor, and is "not entitled to a trial simply because the determinative issue focuses upon the defendant's state of mind." *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988). "The summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).

## II. The Parties' Contentions

### A. Summary of Plaintiff's Claims

Plaintiff maintains that he was the victim of race and color discrimination in that (1)

Defendants "removed [him] from a graded civil service position and contractual 'step increases' without [his] knowledge based on [his] race and color unlike white employees," (Pl.'s Mem. at 14); (2) his "salary was continually denied parity with other white directors employed by" the County, (*id.* at 2, 15-16); (3) the County continually failed to pay him cost of living increases, (*id.* at 16); (4) he was prevented from "advancement in his career by pretextual and contradicting reasons given to bar his entrance to civil service exams and positions for which [he] was qualified," (*id.* at 2; 16-18 ); (5) he was repeatedly required to perform the same out of title duties without compensation, (*id.* at 10, 18-19); and (6) Defendants refused to resolve his grievances because of his race and color, (*id.* at 4.)

He further claims that the Defendants retaliated against him for protected activity by refusing to effectuate and execute the Stipulation, by delaying the settling of his grievances, by refusing to resolve his grievances issues when approached by individual County legislators, and by the direction to then Executive Director Frierson to permanently remove the line in the fiscal budget for a salary increase for Plaintiff. (Pl.'s Mem. at 19-22)

### B. Defendants' Motion

In support of their motion for summary judgment, Defendants maintain that (1) Plaintiff's Title VII claims of race discrimination are untimely, (2) Defendants Kampe and Goldfarb cannot be held personally liable under Title VII; (3) Plaintiff has failed to offer admissible evidence that Defendants intentionally discriminated against him; (3) the Title VII retaliation claim fails because Plaintiff did not engage in protected activity and did not experience an adverse employment action; (4) there is no evidence of a constitutionally protected conduct or retaliatory motive to support the § 1983 retaliation claim; (5) the claims under § 1981, 1983 and 1985 are

untimely; (6) the Title VI claims are deficient because the HR Commission does not receive federal funding and the County cannot be held liable based on the actions of its employees; (7) there is no evidence of a conspiracy under § 1985 to deprive Plaintiff of his constitutional rights; (8) the § 1983 claim is deficient because there is no evidence to support *Monell* liability of the County and no evidence to support an equal protection claim; (9) Plaintiff has no viable FLSA claim; (10) the New York Executive law claims fail for the same reasons as the federal discrimination claims; and (11) all the asserted state law claims are subject to dismissal for failure to serve a notice of claim.

### III. Timeliness of Plaintiff's Claims

Defendants contend that Plaintiff's Title VII, Title VI, § 1981, § 1983 and § 1985 claims are untimely. The Court shall address the issue of timeliness as to each of these statutes in turn.

#### A. Title VII

Before filing a complaint in federal court, a Title VII claimant must first exhaust his administrative remedies by filing a charge of discrimination with the EEOC and receiving a "right to sue" letter. *See Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 325 (2d Cir. 1999). In New York, a claimant must file the charge within 300 days of the alleged unlawful act. *See* 42 U.S.C. § 2000e-5(e); *Tewksbury*, 192 F.3d at 327-28; *see also Stuevecke v. N.Y. Hosp. Med. Ctr. of Queens*, 2003 WL 22019073, at *3 (E.D.N.Y. Aug. 26, 2003) (citing 42 U.S.C. § 2000e-5(e)(1)). The filing requirement is analogous to a statute of limitations, barring all claims arising outside the 300-day period. *See Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996). Like statutes of limitations, the time limits for filing with the EEOC "are subject to 'waiver, estoppel, and equitable tolling.'" *Mazurkiewicz v. New York City Health & Hosp.*

*Corp.*, 2009 WL 4825381, *1 (2d Cir. Dec. 16, 2009) (Summary Order) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)).

The 300-day limitation period generally begins to run when the plaintiff knows or should know of the occurrence of the alleged discriminatory act. *Morse v. Univ. of Vt.*, 973 F.2d 122, 125 (2d Cir. 1992). That is, the time bar is typically based on when the discriminatory acts happen, not when their effects are felt. *See Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980). The Supreme Court has made it clear that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). "Discrete discriminatory acts" include "termination, failure to promote, denial of transfer, or refusal to hire." *Id.* at 114 (emphasis added).

In *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618 (2007), the Supreme Court held that an employer's decision with respect to setting pay is a discrete act of discrimination, and that the relevant period of limitations begins to run when the act first occurs. The *Ledbetter* decision was superseded by the enactment of the "Lilly Ledbetter Fair Pay Act of 2009" ("The Ledbetter Act"), which amended 42 U.S.C. § 2000e-5(e) to add the following provisions:

> (3)(A) . . .[A]n unlawful employment practice occurs, with respect to discrimination in compensation in violation of this title, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

16

> (B) In addition to any relief authorized by . . . 42 U.S.C. 1981a, liability may accrue and an aggrieved person may obtain relief as provided in subsection (g)(1), including recovery of back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge filing period are similar or related to unlawful employment practices with regard to discrimination in compensation that occurred outside the time for filing a charge.

Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, § 3, 123 Stat. 5, 5-6.   The Ledbetter Act deems each paycheck issued pursuant to a discriminatory compensation decision or pay structure an independent, actionable act.  It applies retroactively "to all claims of discrimination in compensation under Title VII . . . that are pending on or after [May 28, 2007]." Id. at 123, Stat. 5, 6-7.

As noted earlier, there is a dispute as to the actual date of Plaintiff's filing of his administrative claim.  Drawing all inferences in Plaintiff's favor and using the earliest claimed date of filing, to wit October 6, 2006, the 300 day rule requires that the act which form the basis of Plaintiff's claims have occurred within 300 days of that date or no earlier than December 9, 2005.

Under the Ledbetter Act, if Plaintiff demonstrates that his wages as Director of Job Development were the result of a discriminatory decision to pay him less money because of his race and successfully proves a  filing date of October 6, 2006, his claims to recover for each paycheck received in that position dating back to December 9, 2005 are timely even if the discriminatory decision did not occur within that period.   In addition, he may recover for up to two years preceding the filing of his charge, whether it is determined to be October 6, 2006, November 20, 2006 or some other date. *See Schengrund v. Pennsylvania State Univ.*, 2009 WL

3182490, *5 (M.D. Pa. Sept. 30, 2009); *see generally Miller v. Kempthorne*, 2009 WL 4893670,

*2 (2d Cir. Dec. 21, 2009) (Summary Order).  Drawing all favorable inference in Plaintiff's favor

regarding the filing date, assuming he is successful on this claim, he may not recover for

paychecks issued prior to October 6, 2004.  Similarly, if Plaintiff demonstrates that the failure to

give him cost of living increases in 1998 and 1999 were the result of race discrimination, he may

recover, at most, on that claim for each paycheck he received in the position of Director, Job

Development, dating back to October 6, 2004.   Finally, if he demonstrates that he was required

to perform the same out of title duties without compensation because of his race, he may recover

on that claim at best for each paycheck he received in the position of Director, Job Development,

dating back to October 6, 2004.[10]  Defendants' motion for summary judgment is granted on these

claims only to the extent Plaintiff seeks to recover for paychecks issued prior to October 6, 2004.

With respect to the claim that Defendants removed Plaintiff from a graded civil service

position and contractual step increases based on his race and color, that removal occurred in

January 1996, more than three hundred days prior to Plaintiff's claimed EEOC filing on October

6, 2006.  That removal was a discrete act, akin to a termination.  *See National R.R. Passenger

Corp v. Morgan,* 536 U.S. 101, 109-110 (2002) (certain acts such as the failure to promote,

termination, denial of transfer and refusal to hire are discrete acts which occur on the day that

they happen).  That Plaintiff may not have known at the time of the change that he was moving

---

[10]  The Court notes that in his motion papers Plaintiff claims he is required to perform out of title work in his current position of Interim/Acting Director of the HR Commission.   His appointment to that position occurred, however, after the filing of the instant action. and his claims related thereto shall not be considered as no supplemental complaint has been filed.  *See* Fed. R. Civ. P. 15(d) (on motion and reasonable notice, court may permit service of "a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented).

18

from a graded civil service position to an ungraded one does not save this claim as there is no dispute that he became aware of this fact prior to December 9, 2005. *See Vuong v. New York Life Insur. Co.*, 2009 WL 306391, * 7-8 (S.D.N.Y. Feb. 6, 2009) (Claim that plaintiff was discriminated against by failure to honor assurances that his position as co-manager was temporary and he would be sole manager after three years was barred as untimely where three years elapsed and no mention was made about a change in status as he would have known or had reason to know that the promised change was dead.), *aff'd*, 2010 WL 93157, *1 (2d Cir. Jan. 12, 2010) (Summary Order).

Also barred as discrete acts, similar to a refusal to hire or failure to promote, are Plaintiff's claims that he was prevented from advancement by being denied entrance to civil service examinations and positions for which he was qualified. *Cf. Moore v. Napolitano*, 2009 WL 4723169, * 10 n. 6 (E.D. La. Dec. 3, 2009) (holding Ledbetter Act does not apply to a failure to promote claim because such a claim is not a "discriminatory compensation" claim). The bases for this charge, to wit (1) the "refusal" in 1998 and 1999 to automatically place Plaintiff back in the position of Human Relations Representative I; (2) the denial in 1999 of his request to take the promotional examination for Human Relations Representative II; (3) the rejection in 2000 of his application to take the examination for cultural affairs specialist; and (4) the rejection in 2001 of Frierson's request for a change in Plaintiff's position and title, all occurred prior to December 9, 2005.

The last claim to be considered is Plaintiff's claim that Defendants refused to resolve his grievances because of his race. As set forth above, the grievances were filed in April 2001 and the Stipulation related thereto is dated December 2001. Thereafter, the Stipulation was

continuously not implemented such that on or about August 26, 2005, a breach of contract action was filed in New York State Supreme Court on behalf of the CSEA and Plaintiff seeking to enforce the Stipulation. "Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action. . . . Thus, the timeliness of a discrimination claim is measured from the date the claimant receives notice of the allegedly discriminatory decision." *Davis v. New York State Office of Mental Health*, 2009 WL 5178440, *6 (E.D.N.Y. Dec. 31, 2009) (internal citations and quotations omitted). Given Plaintiff's filing of an action on August 26, 2005 to compel the enforcement of the Stipulation, a reasonable jury would have to conclude that Plaintiff was aware of Defendants' decision not to abide by the Stipulation as of that date. Having learned of the decision not to resolve his grievances no later than August 26, 2005, the timeliness of his administrative filing is measured no later than from that date. The claim is therefor time-barred.

Plaintiff's argument that the claim is actionable under the continuing-violation theory fails. In *Morgan*, the Supreme Court restricted the scope of the continuing violation doctrine as applied to claims of disparate treatment. 536 U.S. at 113. Therein it held that the "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* Similar to an employer rejection of an employee's proposed accommodation for religion, the County's rejection of the Stipulation "does not give rise to a continuing violation. Rather, the rejection is the sort of 'discrete act' that must be the subject of a complaint to the EEOC within 300 days." *Elmenayer v. ABF Freight Sys. Inc.*, 318 F.3d 130, 134-35 (2d Cir. 2003); *cf. Washington v. County of Rockland*, 373 F.3d 310, 318 (2d Cir. 2004) (decision to file disciplinary charge against plaintiff is a single act discrete in nature; although the decision could be revisited "doing

so would not have turned the act of filing the charges into a continuous or ongoing policy or practice."); *see also Aspilaire v. Wyeth Pharmaceuticals, Inc.,* 612 F. Supp. 2d 289, 301 (S.D.N.Y. 2009).

In addition to the theory of continuing violation, Plaintiff maintains that any claims prior to 300 days preceding the filing of his administrative charge are timely under the doctrine of equitable tolling. It is to this argument that the Court turns.

Equitable tolling is "only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights." *Zerelli-Edelglass v. New York City Transit Authority,* 333 F.3d 74, 80 (2d Cir. 2003) (internal quotation marks and citation omitted); *see also Mazurkiewicz,* 2009 WL 4825381, *1. It "is generally considered appropriate 'where the plaintiff actively pursued judicial remedies but filed a defective pleading during the specified time period,' . . .; where plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant, . . .; or where a plaintiff's medical condition or mental impairment prevented [him or] her from proceeding in a timely fashion . . . ." *Zerelli-Edelglass*, 333 F.3d at 80 (internal citations omitted). "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period [he] seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Id.* at 80-81 (quoting *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002).

Plaintiff's equitable tolling argument is premised on the claim "that he acted with reasonable diligence during the time period he seeks to have tolled as he actively sought relief

from within the CBA Grievance procedures and Nassau County administration" and "he was under the belief that the grievance procedure would rectify the discrimination he had suffered . . . ." Pl.'s Mem. at 8-9. The issues presented in the grievances, however, are not coextensive with the claims herein. For example, the grievance makes no mention of the claims that he was prevented from advancement by being denied entrance to civil service examination and positions for which he was qualified. To the extent a claim asserted herein was not asserted in the grievance there can be no tolling for that claim. Most importantly, Plaintiff simply fails to present evidence of the kind of exceptional circumstances required for equitable tolling. *Cf. Zerelli-Edelglass*, 333 F.3d at 80-81; *Baroor v. New York City Dept. of Educ.*, 2010 WL ----, (2d Cir. Jan. 21, 2010) (Summary Order).

**B. Sections 1981, 1983, and 1985, Title VI, and the NYSHRL**

Section 296 of the New York State Human Rights Law, as well as § 1983 and § 1985, and Title VI allow three years from the date of injury caused by discrimination for commencement of an action. *See Cloverleaf Realty of New York, Inc. v. Town of Wawayanda*, 572 F.3d 93, 94 (2d Cir. 2009)*; Clissuras v. City University of New York*, 90 Fed. Appx. 566, *1 (2d Cir. Feb. 19, 2004) (Summary Order); *Jaghory v. N.Y. State Dept. of Educ.*, 131 F.3d 326, 331 (2d Cir. 1997)*; Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994); *Folkes v. New York College of Osteopathic Medicine,* 214 F. Supp. 2d 273, 292 (E.D.N.Y. 2002); N.Y. CPLR 214. Claim arising under § 1981 are governed by a four year statute of limitations. *Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369, 371 (2004); *Williams v. Consolidated Edison Corp.*, 255 Fed. Appx. 546, 2007 WL 4179358, * 1 (2d Cir. Nov. 27, 2007) (Summary Order).

The Court notes initially that although, in addition to Title VII, the Ledbetter Act

amended the Americans with Disability Act, the Rehabilitation Act, and the Age Discrimination in Employment Act, it did not amend Title VI, § 1981, § 1983 or § 1985. *See* Pub. L. No. 111-2. Nor has the New York legislature enacted a statute similar to the Ledbetter Act. Therefore claims for salary discrimination under the NYSHRL, Title VI, § 1981, § 1983 and § 1985 are governed by the Supreme Court's analysis in *Ledbetter*. Accordingly, as the complaint in this action was filed on April 23, 2007, any claim based on the NYSHRL, Title VI, § 1983 or § 1985, arising prior to April 23, 2004 are time-barred and claims based on § 1981 arising prior to April 24, 2003 are time-barred.

### IV. Race and Color Discrimination

Title VII of the Civil Rights Act of 1964 provides in pertinent part:

> It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex or national origin.

42 U.S.C. § 2000e-2(a).

Section 1981 states in relevant part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State . . . to make and enforce contracts, . . . and to the full and equal benefit of all the laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a).

Section 1981 claims based on employment discrimination, and employment discrimination claims under the New York State Human Rights Law are analyzed under the same standards used for Title VII claims. *See, e.g., Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597,

609 (2d Cir. 2006); *Whidbee v. Garzarelli Food Specialities, Inc.*, 223 F.3d 62, 69 (2000); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998).

## A.   The McDonnell-Douglas Burden Shifting Methodology

In *McDonnell-Douglas Corporation v. Green*, 411 U.S. 792, 802-804 (1973), the Supreme Court first enunciated the now-familiar "burden-shifting" formula used in analyzing Title VII employment discrimination claims based on indirect or circumstantial evidence.  *See Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003).   This standard was further refined in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-253 (1981) and *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-511 (1993).

Under *McDonnell-Douglas* and its innumerable progeny, (1) a plaintiff must first establish a prima facie case of discrimination; (2) the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions; if the employer does so, the *McDonnell-Douglas* framework and its presumptions and burdens disappears, leaving the sole remaining issue of "discrimination vel non," and thus (3) the burden shifts back to the plaintiff to prove that the employer's stated reason is merely pretextual and that discrimination was an actual reason for the adverse employment action.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).  Although intermediate evidentiary burdens shift back and forth under this framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  *Id.*

The burden of establishing a prima facie case of employment discrimination has been described as "modest," *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994), or even  "minimal,"  *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001).  It is a burden

of production, not persuasion, and involves no credibility assessments.  *Reeves*, 530 U.S. at 143.

Likewise, the employer's burden of showing a legitimate non-discriminatory reason for its actions is not a particularly steep hurdle.  It is not a court's role to second-guess an employer's personnel decisions, even if foolish, so long as they are non-discriminatory.  *See Seils v. Rochester City Sch. Dist.*, 192 F. Supp. 2d 100, 111 (W.D.N.Y. 2002) (citing, *inter alia*, *Meiri v. Dacon*, 759 F.2d 989, 995 (2d Cir. 1985)), *aff'd*, 99 Fed. Appx. 350 (2d Cir. June 9, 2004) (Summary Order).  Federal courts do not have a "roving commission to review business judgments," *Mont. v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 106 (2d Cir. 1989) (quoting *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 21 n. 8 (7th Cir. 1987)), and may not "sit as super personnel departments, assessing the merits – or even the rationality – of employers' non-discriminatory business decisions." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 825 (1st Cir. 1991).  Thus, "[e]vidence that an employer made a poor business judgment generally is insufficient to establish a question of fact as to the credibility of the employer's reasons." *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988).

In order to demonstrate that the employer's stated non-discriminatory reasons for the allegedly discriminatory action are pretextual, "[a] plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995).  However, to rebut an employer's proffered non-discriminatory rationale for its actions and withstand summary judgment, a plaintiff must present more than allegations that are "conclusory and unsupported by evidence of any weight." *Smith v. Am. Exp. Co.*, 853 F.2d 151, 154-55 (2d Cir. 1988).  "To

allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases." *Meiri*, 759 F.2d at 998.

**B.      Plaintiff Fails to Raise a Genuine Issue of Material Fact as to his Title VII, § 1981 and NYSHRL Discrimination Claims**

To establish a prima facie case of discrimination under Title VII, a plaintiff must show that: (1) he belonged to a protected class, (2) was qualified for the position he held or sought, and (3) suffered an adverse employment action (4) under circumstances giving rise to an inference of discriminatory intent. *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003).[11]  Defendants concede that Plaintiff has established the first two elements of his prima facie case, viz. that he was a member of a protected class and that he was qualified.  Defendants contend, however, that Plaintiff cannot prove that he suffered an adverse employment action under circumstances giving rise to discrimination.  In addressing this matter, the Court shall address all the bases for Plaintiff's discrimination claims, including those the Court has found to be time-barred.

A Title VII plaintiff may establish an inference of discriminatory intent in a number of different ways depending on the specific facts of the case.  *See Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001).  For example, a discriminatory race and/or color motive can be inferred if a plaintiff was treated differently than similarly situated white employees or  if the defendants engaged in a pattern of discriminatory treatment of African-American employees. *See Johnson v. County of Nassau*, 480 F. Supp. 2d 581, 597 (E.D.N.Y. 2007).  Other circumstances that permit the drawing of a discriminatory inference include:

---

[11]  The same standards apply to Plaintiff's claims of race and color discrimination under the NYSHRL.  *See Patane v. Clark*, 508 F.3d 116, 113 (2d Cir. 2007).

the employers continuing, after discharging the plaintiff, to seek
applicants from persons of the plaintiff's qualifications to fill that
position; or the employer's criticism of the plaintiff's performance
in ethnically degrading terms; or its invidious comments about
others in the employee's protected group; or the more favorable
treatment of employees not in the protected group; or the sequence
of events leading to the plaintiff's discharge.

*Abdu-Brisson,* 239 F.3d at 468 (quoting *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37

(2d Cir. 1994)).

With these precepts in mind, the Court will examine each of Plaintiff's claims.

1.  Promotion to Director, Job Development Center
    and Removal From a Graded Plan

Plaintiff fails to direct the Court's attention to any circumstances, supported by

admissible evidence, that would support an inference of discrimination with respect to his

appointment as Director and his removal from the graded salary plan.   It is undisputed that the

position of Director, Job Development Center was established in 1970 and has been an ungraded

position since that time.   It is undisputed that Rice, who approached Plaintiff about taking the

position, did not discriminate against Plaintiff.  Plaintiff makes no claim that he was forced to

take the position.    Plaintiff's claims that did not know he would not longer be in the graded

salary plan and that Human Resources failed to meet with him to explain what he was

relinquishing simply do not support an inference of discrimination.   While Plaintiff points to

Defendants' failure to proffer evidence that Human Resources met with him prior to his

accepting the position, he does not address his own failure to provide any evidence that Human

Resources had such an obligation or even practice or that the failure to meet with him and

explain what he was relinquishing was because of his race.

2. <u>Unequal Pay Claims</u>

Plaintiff maintains that Defendants continually gave raises to white Directors.[12]  In support of this assertion Plaintiff offers newspaper articles reporting on raises given to County officials.  Said newspapers articles are not admissible evidence to support the claim that white directors were paid more than Plaintiff, that raises were given, that the recipients were white, or that Plaintiff's work required substantially the same responsibility as those persons allegedly given raises.

Under Second Circuit law, where a plaintiff seeks to make out a case of discrimination "by pointing to the disparate treatment of a purportedly similarly situated employee, the plaintiff must show that []he shared sufficient employment characteristics with that comparator so that they could be considered similarly situated." *Shumway v. United Parcel Serv., Inc.,* 118 F.3d 60, 64 (2d Cir. 1997).  Furthermore, "such an employee must be similarly situated in all *material* respects--not in all respects." *McGuinness v. Lincoln Hall,* 263 F.3d 49, 54 (2d Cir. 2001) (emphasis in original).  "In other words, where a plaintiff seeks to establish the minimal prima facie case by making reference to the disparate treatment of other employees, those employees must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination." *Id.*  Sufficiently similar

---

[12]  Plaintiff's Memorandum also makes reference to the County's "continual refusal to execute its promise to put Plaintiff's salary in parity with white Nassau County Director[s] . . ."  To the extent Plaintiff is referring to promises made by Rice to get Plaintiff an increase, these claims are time-barred as Rice was replaced by Frierson in 2001.   Even if not time-barred, Plaintiff concedes that Rice did not discriminate against him and there is no evidence that Rice had authority to make any promises regarding Plaintiff's pay.  To the extent he may be referring to any promise by Frierson arising from her signature on the Stipulation, the New York State court's decision that the Stipulation was not binding on the County because not executed by a person with authority forecloses such a claim.

includes holding positions of roughly the same rank.  *See id.*

In order to make out a prima facie case of unequal pay for equal work under Title VII, Plaintiff must show that "[]he was paid less than non-members of h[is] class for work requiring substantially the same responsibility" and he must in addition produce evidence of "discriminatory animus."  *Belfi v. Prendergast*, 191 F.3d 129, 139 (2d Cir. 1999).

Plaintiff offers only the following comparison:

> One such example is Defendant Goldfarb, a white male, with only a high school education and was [sic] appointed Director of Personnel for Human Resources, in 1999.  Defendant Goldfarb had no formal training for the position of Director of Personnel. Defendant Goldfarb supervised three employees and received a salary of $66,500.  In or about Spring 2001, Defendant Goldfarb's salary was increased to $72,485, as a result of taking on additional duties. ([Brewington Decl. Exh.M]; Pl. 56.1 Counter-Statement ¶23-31.)
>
> Plaintiff has a four year college degree in business administration, supervised from four to six employees and was well-qualified for the position he held.  Plaintiff's salary as Director, Job Development Center was $45,196 in 1999. Defendant Goldfarb's salary exceed Plaintiff's salary by approximately $23,103 in April 2001.  On May 27, 2008, Plaintiff's salary was only sixty-three thousand dollars ($63,000) when he resigned as Director, Job Development to assume the position of Interim/Acting Executive Director of NCCHR. Plaintiff's salary in 2008 remained considerably less than that of white Defendant Goldfarb's salary of seventy-two thousand, four hundred and eighty-five dollars ($72,485) in 2001. (*Id.*)

(Pl.'s Mem. in Opp. at 14-15.)   However, neither "Ex. M" or paragraphs 23-31 of Plaintiff's 56.1 provide support for the factual assertions concerning Goldfarb's salary.   In addition, whether jobs have similar duties and responsibilities is more than just a matter of the number of people supervised.  Nor does the mere fact that both Goldfarb and Plaintiff had the title "Director" require that their salaries be comparable.  *Rowland v. Certainteed Corp.*, 2009 WL

1444413, * 9 (E.D. Pa. May 21, 2009). Goldfarb as the Director of Personnel, was responsible

for overseeing a Department, to wit the Department of Personnel, whereas Plaintiff was not.

Finally, the record is silent as to whether Goldfarb's position as Director of Personnel was

classified or unclassified, exempt or nonexempt, within or without a graded salary plan and

whether his position was covered by the CBA. On the present record no reasonable jury could

conclude that Plaintiff and Goldfarb were similarly situated.

Plaintiff also attempts to support his case by maintaining there is a pattern of and practice

of pay discrimination. He asserts that

> as part of its pattern . . . Defendants failed to put Former Executive
> Director Frierson, an African-American female attorney, in parity
> with white Executive Directors and Department heads employed
> by Nassau County for several years. Former Executive Director
> Frierson was compensated twenty-thousand ($20,000) to thirty
> thousand ($30,000) dollars less than other similarly situated white
> Executive Directors. In fact, Executive Director Frierson's salary
> was less in 2005 than that of Defendant Goldfarb in 2001.

(Pl.'s Opp. Mem. at 15.) Plaintiff has failed to offer competent evidence from which any

reasonable trier of fact could infer that Frierson and Goldfarb had substantially similar job

responsibilities. As stated earlier, the mere fact that the two held the title of Director does not,

per se, support the conclusion that the two positions had substantially the same responsibilities.

Additionally, Plaintiff has not produced any evidence, such as payroll records, to substantiate the

claim that Goldfarb's pay exceeded Frierson's or the claim that Frierson's salary was not in

parity with white Executive Directors and Department heads.[13] Memoranda from Frierson

containing bald assertions that she is being discriminated against in pay because other

---

[13] Defendants have, however, submitted payroll records demonstrating that, in fact,
Frierson's salary in 2001 was nearly $13,000 more than Goldfarb's.

departments heads have had increases anywhere from $10,000.00 to $30,000.00 (*see* Ex. EE and GG to Brewington Decl.) are insufficient to provide support for the claimed pattern and practice. Accordingly, the record is insufficient to establish a prima facie case of pay discrimination.

### 3. Failure to Pay COLA Increases

Plaintiff maintains that he was entitled to a 2% cost of living increase due in January 1998 and a 3% cost of living increase in July 1999 and that he never received these increases because "Human Resources changed the information in Plaintiff's computerized Human Resources file to prevent [him] from receiving [the increases] [he] was entitled to under the CBA based on [his] race and color." While there is evidence that Human Resources was responsible for processing paperwork "so people could get their pay check" (Goldfarb Dep. at 12), it is not clear that the Department of Personnel was responsible for initiating the processing of cost of living increases. Assuming that it was, the mere fact that Plaintiff did not receive the increase in and of itself does not permit an inference that the reason was his race. *Cf. Grillo v. New York City Transit Auth.*, 291 F.3d 231 (2d Cir. 2002) (upholding summary judgment on discrimination claims where plaintiff did "little more than cite to his mistreatment and ask the court to conclude that it must have been related to his race") (internal quotations omitted). Plaintiff has failed to establish a prima facie case of discrimination as to this claim.

### 4. Actions Preventing Plaintiff's Advancement

Turning first to the claim that the refusal to return Plaintiff to the position of Human Relations Representative I was racially motivated, Plaintiff argues that "Rice refused to grant Plaintiff's several requests to be returned to Plaintiff's former position" and the assertion that Plaintiff was not entitled to return to the position is pretextual, citing civil service rules that allow

31

the Civil Service Commission to permit an employee to return to their prior position even if they did not take a leave of absence. (Pl.'s Mem. in Opp. at 17.) But arguing pretext, jumps a step in the process as first a prima facie case must be established. Here, Plaintiff admits that Rice did not discriminate against him. To the extent Plaintiff claims Kampe's actions were racially motivated the claim must fail as there is an absence of evidence that (a) Plaintiff ever directed a request to return to his former position to either Kampe or the Civil Service Commission and (b) the circumstances under which other similar requests were granted.

Plaintiff also maintains that the denial of his request to take the Cultural Program Specialist test in April 1999 on the basis that the experience he acquired was obtained "out-of-title" was racially motivated pointing to Kampe's determination, in connection with Frierson's request to create a new position and title for Plaintiff, that his duties were appropriate for his title. In rejecting the test application Kampe avers that he relied on the written job specifications in concluding that if as of that time Plaintiff had been "involved in the conduct of cultural or recreational services, events or programs while in the title Human Relations Representative I or Director, Job Development Center, this would be out-of-title and unacceptable." (Ex. AA to Famighetti Decl.) There is no evidentiary basis to conclude that Kampe in ruling on Frierson's request, looked at anything other than the written specifications for Plaintiff's position as Director, Job Development Center (Ex. X to Famighetti Decl.) or that race played a role in Kampe's decision. In any event, the Court's attention has not been directed to any documents which describe the duties of the new position proposed by Frierson to include " the conduct of cultural or recreational services, events or programs" so as to provide evidentiary support for Plaintiff's conclusory claims.

Finally, Plaintiff's claim that Deputy County Executive Fisher's refusal in 2001 to appoint Plaintiff to the position of Deputy Executive Director of the HR Commission because of budgetary concerns was pretextual, again, is advanced absent evidentiary support. Simply asserting that numerous white directors and executive staff members received substantial raises without more information, such as the comparability of their positions to that of Plaintiff's as discussed earlier, is insufficient as a matter of law to create an issue of fact for a jury's determination.

### 5. Failure to Compensate for Out-of Title Work

As noted earlier, Plaintiff asserts that he was required to perform out of title work and was not compensated for these services as required by the CBA, unlike white directors employed by the county "who routinely received additional compensation for performing additional duties irrespective of their civil service status." (Pl's Mem. at 19.) As noted more than once, the newspaper article upon which Plaintiff relies for the proposition that white directors routinely received additional pay for additional duties is not admissible evidence.

In sum Defendants' motion for summary judgment on Plaintiff's race and color discrimination claims asserted pursuant to Title VII, § 1981 and NYSHRL is granted.[14]

## V. Retaliation

Title VII "forbids an employer to retaliate against an employee for, inter alia, complaining of employment discrimination prohibited by Title VII." *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006) (citing 42 U.S.C. § 2000e-3(a)). The NYSHRL

---

[14] The Title VII claims against Kampe and Goldfarb are also dismissed as a matter of law because "individual defendants are not subject to liability under Title VII." *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (citations omitted).

similarly prohibit retaliation.  N.Y. Exec. Law § 296(e).  Claims of retaliation pursuant to Title VII and NYSHRL are analyzed according to the burden-shifting framework set forth in *McDonnell Douglas*.  *See Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003).

"In order to present a prima facie case of retaliation under Title VII . . . , a plaintiff must adduce 'evidence sufficient to permit a rational trier of fact to find [1] that []he engaged in protected participation or opposition under Title VII, [2] that the employer was aware of this activity, [3] that the employer took adverse action against the plaintiff, and [4] that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action.'" *Kessler*, 461 F.3d at 205-206 (brackets in original) (quoting *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir. 2001)).

The first element of the prima facie standard requires that Plaintiff have taken "action . . . to protest or oppose statutorily prohibited discrimination."  *Cruz*, 202 F.3d at 566; *see Taylor v. Family Residences & Essential Enterprises, Inc.*, 2008 WL 268801, at *13 (E.D.N.Y. Jan. 30, 2008).  This includes, for example "informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support of co-workers who have filed formal charges."  *Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990); *see Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 566 (2d Cir. 2000).  Indeed, Title VII's protection against retaliation extends to an employee who speaks out about discrimination not on her own initiative, but in answering questions during an employer's internal investigation "if for no other reason than . . . '[w]hen an employee communicates to her employer a belief that the employer has engaged in a form of employment discrimination, that communication 'virtually

34

always' constitutes the employee's opposition to the activity.'" *Crawford v. Metro. Gov't of Nashville and Davidson County Tennessee*, 129 S. Ct. 846, 851 (2009) (ellipses in original omitted). In order to satisfy this prong of a retaliation claim, a plaintiff need only have a good faith reasonable belief that he was opposing an employment practice made unlawful by Title VII." *Kessler,* 461 F.3d at 210; *see Everson v. New York City Transit Auth.*, 2007 WL 539159, *27 (E.D.N.Y. Feb. 16, 2007) ("protected activity . . . refers to any action taken to oppose statutorily prohibited discrimination"). Additionally, "in satisfying the knowledge requirement, only general corporate knowledge that the plaintiff engaged in a protected activity is necessary. *Id.*

In support of his retaliation claim, Plaintiff proffers the following: "[he] engaged in protected activity when he filed his grievance with the Union in Spring of 2001, which included disparate treatment in terms under the CBA. [He] also engaged in protected activity when he filed his original NYSDHR/EEOC complaint on October 6, 2006 and the revised EEOC complaint [on] Nov[ember] 16, 2006. . . . [He] also engaged in protected activity when he contacted Nassau Legislators individually and by correspondence regarding Defendants' failure to resolve his grievance and put his pay in parity with white Directors employed by Defendants." (Pl.'s Mem in Opp. at 20.)

Defendants' sole argument in support of the motion for summary judgment on Plaintiff's retaliation claim is as follows:

> Plaintiff never complained that he was not receiving automatic salary increases or placement in the graded salary plan because of his race/color. Rather he simply continued to ask his supervisor (Rice and Frierson) to get him raises. Since Plaintiff had no constitutionally protected right or entitlement to the step

plan or salary increases it does not rise to the level [of] protected
activity sufficient to support his retaliation claims.
. . . Plaintiff has not suffered any adverse employment
action, *i.e.*, Plaintiff cannot point to a [sic] even single negative
employment reference, while employed [in] the Director Position;
in fact, he was employed in the Director Position for over a decade.
. . .

(Defs.' Mem at 24-25.)

As framed, Defendants' argument is without merit. What appears to be the initial

grievance in 2001 references that "the terms of the contract are not being adhered to  uniformly."

(Ex. AA to Brewington Decl.) Standing alone, this would seem to be insufficient to rise to the

level of protected activity as there is no claim that the nonuniformity is based on race or color.

However, before the Court is a letter from Tim Corr, Grievance Chair, CSEA to Seth Weiss,

Counsel for the County's Office of Labor Relations, dated August 17, 2004. The enclosure to

that letter is, for want of a better description, a multi-page explanation of the grievance which

refers initially to the problem as "threefold":

1) Unfair Labor/Unequal Pay
2) Contractual - Non-enforcement of Grievance Stipulations
3) *Discrimination - No white Directors are treated in this manner*.

(Ex. W to Brewington Decl. (emphasis added).) The reference to discrimination is sufficient to

constitute protected activity. Moreover, Defendants' argument does not address Plaintiff's claim

of retaliation in response to (1) his filings with the NYSDHR/EEOC, which are unquestionably

protected activity, and (2) his complaints to Nassau County legislators. Finally, the mere fact that

Plaintiff did not receive a "negative employment reference" is without significance given that

Plaintiff contends, inter alia, that the failure to effectuate the Stipulation and/or otherwise resolve

his salary issues was in retaliation for his claims of race/color discrimination and that

Cunningham's August 2006 direction not to include funds for a salary increase for Plaintiff in the proposed budget for 2007 was similarly retaliatory; neither of these contention are not addressed by Defendants. Absent such a discussion, the Court cannot conclude that Defendants are entitled to judgment.

The motion for summary judgment on the retaliation claims is denied as framed by Defendants.

**VI.     Title VI**

Title VI of the Civil Rights Act of 1964 provides

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d.

Initially, the Court notes that Title VI claims cannot be asserted against an individual defendant because the individual is not the recipient of federal funds. *Folkes*, 214 F. Supp. 2d at 292. Accordingly, the Title VI claims against Goldfarb and Kampe are dismissed.

Defendants argue that the Title VI claims against HR Commission and the Civil Service Commission must be dismissed as they do not directly receive federal funding, a prerequisite to suit. The record before this Court is silent as to whether or not these two defendants receive federal funds. While Plaintiff asserts in his memorandum that both Nassau County and the HR Commission receive federal funds, he makes no such assertion (much less provide any evidence to support such an assertion) with respect to the Civil Service Commission. Accordingly, the Title VI claims against the Civil Service Commission are dismissed. As to the HR Commission,

even putting aside the absence of any admissible evidence that it receives federal funds, the claims against it are subject to dismissal. The HR Commission is a department of the County and "[u]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002); *see also Aguilera v. County of Nassau*, 2006 WL 2690242, at *3 (E.D.N.Y. Sept. 18, 2006); *Warner v. Village of Goshen Police Dept.*, 256 F. Supp. 2d 171, 176 (S.D.N.Y. 2003). The County is the real party in interest and is named as a defendant in this action. *See Fanelli v. Town of Harrison*, 46 F. Supp. 2d 254, 257 (S.D.N.Y. 1999). Accordingly, the Title VI claims against the HR Commission are dismissed as well. [15]

Turning then to the Title VI claims as against the County, the arguments offered in support of summary judgment are that Plaintiff seeks to hold the County accountable for the acts of its agents contrary to the holding in *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998), and there is no allegation the County acted with requisite discriminatory intent.

Contrary to Defendants' position, *Gebser* does not require dismissal of the Title VI claim against the County. In *Gebser*, the Court held in cases that do not involve an official policy of the recipient entity, a damage remedy under Title IX, (which is patterned after Title VI,[16]) will

---

[15] Indeed, the reason noted warrants the dismissal of all claims against the HR Commission.

[16] Title IX is parallel to Title VI. Whereas Title VI prohibits race discrimination in all programs receiving federal funding, Title IX prohibits sex discrimination in education programs receiving federal funding. "The two statutes operate in the same manner, conditioning an offer of federal funding on a promise by the recipient not to discriminate, in what amounts essentially a contract between the [Federal] Government and the recipient of the funds." *Gebser*, 524 U.S. at 286.

not lie "unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails to adequately respond."  524 U.S. at 290.  As Plaintiff correctly argues, there is evidence that the County had actual knowledge of Plaintiff's discrimination claim as a result of the allegation of discrimination in the grievance, as well as his NYSDHR/EEOC Complaint, and no corrective measures were taken.

However, as discussed with respect to Title VII, Plaintiff has failed to raise a material issue of fact as to whether he was subjected to race and/or color discrimination.  Accordingly, summary judgment is granted on the Title VI race and color discrimination claim but denied as to the Title VI retaliation claim against the County.

## VII.  Section 1983 Claims

In order to bring a § 1983 claim against a municipal defendant, a plaintiff must establish both a violation of his constitutional rights and that the violation was motivated by a municipal custom or policy.  *See Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *see also Coon v. Town of Springfield, Vt.*, 404 F.3d 683, 686 (2d Cir. 2005) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

In support of his 1983 claim, Plaintiff maintains

> Nassau County has a policy or custom of unequal treatment toward African-American employees based on their race and color.  In particular, Defendant hire [sic] African-Americans and place them in leadership title but fail to pay African-American directors and management the same as white employees, and fail to provide them

> with comparable support to be successful. Furthermore African-Americans are forced to take on extra duties without being paid compensation, unlike whites.

(Pl.'s Mem. in Opp. at 29-30.) However, as discussed in section IV(B), *supra*, Plaintiff has failed to offer admissible evidence that any African-American director was not paid the same as a similarly situated white employee. Nor is there any admissible evidence of any African-American Director or manager not being given "comparable support" as a similarly situated white employee or being forced to take on extra duties without pay, unlike a similarly situated white employee. Evidence of these propositions must accompany any claim of the existence of policy or practice. *See Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) (noting that "the mere invocation of the 'pattern' or 'plan' will not suffice") (citations omitted).

Plaintiff also argues that he has a 1983 retaliation claim against the County, maintaining that he engaged in the following constitutionally protected activity for which the County retaliated against him: filing his grievances with the Union; filing his EEOC Complaint; filing the litigation to enforce the Stipulation; and filing the instant litigation. Defendants maintain this claim should be dismissed because Plaintiff's speech was not on a matter of public concern.

In order to establish a First Amendment retaliation claim, an employee must prove that: "(1) [he] engaged in constitutionally protected speech . . .; (2) [he] suffered an adverse employment action; and (3) the speech was a 'motivating factor' in the adverse employment decision." *Skehan v. Vill. of Mamaroneck*, 465 F.3d 96, 106 (2d Cir. 2006), *overruled on other grounds, Appel v. Spiridon*, 531 F.3d 138, 139 (2d Cir. 2008). In determining whether a public employee engaged in constitutionally protected speech, a court must determine "whether the employee spoke as a citizen on a matter of public concern." *Garcetti v. Ceballos*, 547 U.S. 410,

418 (2006). "If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Id.* If the answer is yes, a court must then determine "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Id.; see also Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008).

The courts have recognized that while the First Amendment protects employees' speech in certain circumstances, it does not permit employees to "constitutionalize the employee grievance." *Garcetti*, 547 U.S. at 418. "Although a public employee 'does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment,' these rights are not absolute, because the public employer has a legitimate interest in regulating the speech of its employees to promote the efficiency of its public services. *Mandell v. County of Suffolk*, 316 F.3d 368, 382 (2d Cir. 2003) (citing *Connick v. Myers*, 461 U.S. 138, 140 (1983)); *see also Garcetti v. Ceballos,* 547 U.S. 410, 418 (2006) ("A government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations."); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)).

With respect to whether speech is on a matter of public concern, a court must "tak[e] into account the content, form, and context of a given statement as revealed by the record as a whole.' . . . The heart of the matter is whether the employee's speech was 'calculated to redress personal grievances or whether it had a broader public purpose.'" *Ruotolo*, 514 F.3d at 189 (quoting *Lewis v. Cowen*, 165 F.3d 154, 163-64 (2d Cir. 1999)).

The question of what is a matter of public concern is not

> amenable to a simple, definitive answer. Nonetheless, *Connick* provides some guidance. It directs courts to examine the "content, form, and context of a given statement, as revealed by the whole record' in assessing whether an employee's speech addresses a matter of public concern. . . . In addition it notes that the standard for determining whether expression is of public concern is the same standard used to determine whether a common-law action for invasion of privacy is present. . . . that standard is established by our decisions in *Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469 . . . and *Time Inc. v. Hill*, 385 U.S. 374, 387-88 . . . . These cases make clear that *public concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication.*

*Piscottano v. Murphy*, 511 F.3d 247, 270 (2d Cir. 2007) (emphasis in original) (quoting *City of San Diego v. Roe*, 543 U.S. 77, 83-84 (2004) (citations omitted). Moreover, "retaliation against the airing of generally personal grievances is not brought within the protection of the First Amendment by 'the mere fact that one or two of [a public employee's] comments could be construed broadly to implicate matters of public concern.'" *Ruotolo,* 514 F.3d at 190 (brackets in original) (quoting *Ezekwo v. New York City Health & Hosp. Corp.*, 940 F.2d 775, 781 (2d Cir. 1991)).

Recently, the Second Circuit reiterated that "[w]hether or not speech addresses a matter of public concern 'must be determined by the content, form and context of a given statement,' as revealed by the whole record . . . and while motive surely may be one factor in making this determination, it is not, standing alone, dispositive or conclusive." *Sousa v. Roque*, 578 F.3d 164, 175 (2d Cir. 2009).

Taking these factors into account, the Court concludes that Plaintiff's speech was not on a matter of public concern. To quote Judge Stein's recent decision in *Sulehria v. City of New York*,

– F. Supp. 2d —, 2009 WL 4036734 (S.D.N.Y. 2009), Plaintiff's union grievances, EEOC

complaint and his state court proceedings :

> consist mostly of instances of alleged hostility and mistreatment
> directed at him personally, and which apparently affected only him.
> . . . Of course, he includes in each of his lengthy complaints an
> allegation to the effect that "I am being subjected to a hostile work
> environment because of my race, color, national origin, creed, and
> in retaliation for opposing discrimination"   This assertion in his
> complaints may well render that harassment legally actionable if he
> can prove it, but it creates only a loose connection between the
> particulars of his relationship with his employer and the broader
> societal interest in combating discrimination, and is insufficient to
> render his allegations of harassment "a matter of public concern"
> meriting constitutional protection. *See, e.g., Ruotolo v. City of N.Y.*,
> 514 F.3d 184, 190 (2d Cir.2008) ("generalized public interest in the
> fair or proper treatment of public employees is not enough" to
> constitute speech on matter of public concern). *Compare Pappas v.
> Giuliani*, 290 F.3d 143, 152 (2d Cir. 2002) (collecting cases
> demonstrating that complaints of racial discrimination by public
> employees are not necessarily matters of public concern) with
> *McGrath v. Nassau Health Care Corp.*, 217 F. Supp. 2d 319, 327-
> 28 (E.D.N.Y.2002) (collecting cases showing that complaints
> about system-wide, pervasive discrimination may constitute
> matters of public concern).

2009 WL 4036734, * 24.  The County's motion for summary judgment on the § 1983 retaliation

claim is granted.

The Court now turns to the remaining § 1983 claim: Count V as it applies to the Kampe

and Goldfarb.  Section 1983 provides, in relevant part:

> Every person who, under color [of law] . . . subjects, or causes to be subjected, any citizen
> of the United States . . .  to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an action at
> law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  This statute furnishes a cause of action for the violation of federal rights

created by the Constitution.  *See Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617

(1979).

A defendant in a § 1983 action may not be held liable unless there is a showing of personal involvement, *i.e.*, direct participation or failure to remedy the alleged wrong after learning of it or creation of a policy or custom under which unconstitutional practices occurred. *Id*.   On this basis the claims against Kampe and Goldfarb must fail.

According to the record before this Court, the Department of Human Resources' only role in promotions was to process the paperwork.  (*Id*. at 12.)  There is no admissible evidence that Goldfarb played any role in determining Plaintiff's salary, denying him raises, determining the level of support for his position or delegating out-of-title to work without compensation to Plaintiff.   To the extent Plaintiff's claim against Goldfarb is that he did not implement the Stipulation which Frierson sent in him under cover of Memorandum dated December 21, 2001, the claim also lacks merit as a matter of law.  Goldfarb testified that he left his position as director overseeing the Department of Human Resources in November 2001, (Goldfarb Dep. at 7- 9), and Plaintiff has pointed to no evidence in the record that would warrant a contrary conclusion.  A fortiori Goldfarb cannot be held liable for any discrimination suffered by Plaintiff after that date.

Summary judgment is granted in favor of Goldfarb on the § 1983 claim.

Kampe is also entitled to summary judgment on the § 1983 claim.  There is no admissible evidence that Kampe played a role in determining Plaintiff's salary, denying him raises, determining the level of support for his position or delegating out-of title to work without compensation to Plaintiff. The undisputed evidence is that he did not have authority to implement the Stipulation absent the proper signatures.   Finally, to the extent the 1983 claim against Kampe is premised on the assertion that he prevented plaintiff's advancement, the claim must fail as

44

discussed *supra* at 31-32.

## VIII. Section 1985

Plaintiff assert a violation of § 1985. Section 1985(3) provides in pertinent part:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. §1985(3).

To succeed on a cause of action under § 1985(3), Plaintiff must allege:

"(1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999); *see also Traggis v. St. Barbara's Greek Orthodox Church*, 851 F.2d 584, 586-87 (2d Cir. 1988). Further, "[t]here must be some racial or perhaps otherwise class-based invidiously discriminatory animus behind the conspirator's action." *Griffen v. Breckenridge,* 403 U.S. 88, 102 (1971); *see Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999); *Gagliardi v. Village of Pawling,* 18 F.3d 188, (2d Cir. 1994).

Defendants move to dismiss the § 1985 claim on the ground that it is barred by the

intracorporate or intra-enterprise conspiracy doctrine as the individual defendants are all employed by the same institutional defendant – the County of Nassau.  Additionally, Defendant argue that there is an absence of  allegations to support the claim.  In response, Plaintiff maintains that the County and the Civil Service Commission are not one entity and that they have met the pleading standard.

The Court need not determine, however, whether the Nassau Civil Service Commission is a separate entity from the County because the § 1985 claim fails on other grounds.

Preliminarily, the Court notes that although the instant motion is titled as one for summary judgment, both parties argue the sufficiency of the conspiracy *allegations* without any reference to the evidentiary record.  Accordingly, the Court shall examine the § 1985 claim under the standard applicable for a motion to dismiss.   As recently enunciated by the Second Circuit, that standard is as follows:

> On a motion to dismiss, courts require "enough facts to state a claim to relief that is plausible on its face.". [*Bell Atlantic Corp. v.*] *Twombly*, 550 U.S. [544,] 570, 127 S.Ct. 1955 [2007]; *see also Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949-50, 173 L.Ed.2d 868 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level...." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. Broad allegations of conspiracy are insufficient; the plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir.2003) (internal quotation marks omitted) (addressing conspiracy claims under 42 U.S.C. § 1985).

*Arar v. Ashcroft*, 585 F.3d 559, 569 (2d Cir. 2009).

The complaint in this matter fails to provide any "factual basis to support a meeting of the minds."  *Id.*   Rather the complaint alleges in conclusory fashion, that  "[e]ach of the Defendants

knew and/or had reason to know that their actions and inactions would deprive Plaintiff of equal protection under the laws, yet the Defendants agreed and conspired with each other to deprive Plaintiff of such rights," Compl. ¶ 63. The § 1985 claim (Third Count) is dismissed.

## IX.  The FLSA Claim

The Fair Labor Standards Act of 1938, 29 U.S.C. § 201, et seq. ("FLSA") was enacted "to eliminate 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers'. . . . In that effort, the FLSA imposes 'wage and hour' requirements, including [a] provision . . . to ensure workers are adequately compensated." *Reiseck v. Universal Commc'ns of Miami, Inc.*, – F.3d —, 2010 WL 59248 (2d Cir. Jan. 11, 2010).

Plaintiff's  FLSA claim is premised, according to his motion papers, on (1) Rice's promise that if Plaintiff accepted the promotion to Director, Job Development, he would be put in parity with other directors; (2) Defendants' "contractual obligation to compensate him for out-of-title work he performed from 1995 to the present"; (3) Defendants' violation of "the time limitations continually under the Grievance Procedure proscribed in the CBA"; and (4) Defendants' refusal to effectuate the Stipulation of Settlement.[17] (Pl.s' Mem. in Opp. at 31.)  Defendants baldly maintain that "Plaintiff has failed to set forth a viable FLSA claim."  Neither party refers the Court to any particular statutory provision or to any relevant case law.

---

[17] Plaintiff also claims a violation of the FLSA by Defendants' violation of the CBA "by not acting on the second ruling made by the Arbitrator in October 2008."  As noted earlier, however, the Court shall not address events post-dating the filing of the Complaint.

To the extent that Plaintiff is attempting to recover under the Equal Pay Act, 29 U.S.C. § 206 (d), his claim fails as a matter of law.[18]  By its terms, that act prohibits wage discrimination based on sex.  *Id.; see also Mudholkar v. Univ. of Rochester*, 261 Fed. Appx 320 (2d Cir. Jan. 25, 2008) (Summary Order) ("The Equal Pay Act is unambiguous in limiting its application to discrimination on the basis of sex . . . .").  Here, there are no allegations of discrimination based on sex.  Nor is there evidence to support any such claims.

Summary judgment is granted on Plaintiff's FLSA claim (Sixth Count).

## X.  State Law Breach of Contract Claim

Plaintiff's breach of contract claim is fairly summarized as follows: his offer of employment with the County, as well as the CBA, included a promise not to discriminate which the County breached "when they discriminated and retaliated against the Plaintiff, failed to provide Plaintiff with proper salary grading or increases and diminished Plaintiff's opportunities for professional advancement, based on his race and his opposition to discriminatory practices."  Compl. ¶ 97; *see id.* ¶¶ 91-96.

Defendants argue that the breach of contract claim fails because Plaintiff did not exhaust his remedies under the CBA.  They fail to specify, however, which steps in the grievance process Plaintiff did not exhaust.  Moreover, as noted earlier, the grievance

---

[18]  According to the complaint's "Preliminary Statement," Plaintiff seeks monetary relief for, inter alia, violations of both the FLSA and the Equal Pay Act.  (Compl. ¶ 1.) The complaint contains a claim under the FLSA but does not contain a claim specifically referencing the Equal Pay Act.  Because the Equal Pay Act is codified within the FLSA, the Court, given the absence of guidance from counsel, presumes that the asserted violation of the FLSA is in fact premised on the Equal Pay Act.

material before this Court includes a multi-page explanation of the grievance which refers initially to the problem as "threefold":

> 1) Unfair Labor/Unequal Pay
> 2) Contractual - Non-enforcement of Grievance Stipulations
> 3) *Discrimination - No white Directors are treated in this manner*.

(Ex. W to Brewington Decl. (emphasis added).) The record evidences that Plaintiff reached mediation, which would suggest that Plaintiff went through at least some of the required grievance procedure. As presented, there is insufficient information for this Court to conclude that Defendants are entitled to judgment in their favor as a matter of law. Accordingly, Defendants' motion for summary judgment on the breach of contract claim is denied.

## XI. NYSHRL

Although the Court has granted summary judgment on Plaintiff's race and color claims under the NYSHRL, it has denied the motion with respect to the retaliation claim under that statute. Accordingly, the Court shall proceed to address whether the NYSHRL retaliation claim must be dismissed for failure to file a notice of claim in accordance with N.Y. Gen. Mun. L §§ 50-I and 50-e and N.Y. County Law § 52.

New York General Municipal Law 50-e requires that a plaintiff must file a notice of claim prior to commencement of a tort action against a municipality, and must serve the notice of claim within ninety (90) days after the claim arises. N.Y. Gen. Mun. Law § 50-e. It is well settled that compliance with the notice of claim requirement is a condition precedent to commencement of an action against municipality and the burden is on the plaintiff to plead and prove compliance with the notice of claim requirement. *P.J.*

49

*Panzeca, Inc. v. Bd. of Educ., Union Free Sch. Dist. No. 6,* 29 N.Y.2d 508 (1971).

Section 50-I of the General Municipal Law requires commencement of an action "within one year and ninety days after the happening of the event upon which the claim is based . . . ." N.Y. Gen. Mun. Law § 50-I. New York County Law §52 is broader than its municipal law counterpart in that § 50-e applies only to tort action. *See Keating v. Gaffney*, 182 F. Supp.2d 278, 290-91 (E.D.N.Y. 2001). Section 52 of the County law provides:

> Any claim or notice of claim against a county for damage, injury or death, or for invasion of personal or property rights, of every name and nature ... and any other claim for damages arising at law or in equity, alleged to have been caused or sustained in whole or in part by or because of any misfeasance, omission of duty, negligence or wrongful act on the part of the county, its officers, agents, servants or employees, must be made and served in accordance with section fifty-e of the general municipal law. Every action upon such claim shall be commenced pursuant to the provisions of section fifty-I of the general municipal law.

N.Y. County Law § 52(1). The Court finds that Plaintiff was required to serve a notice of claim upon the County within ninety days of the date his NYSHRL claim arose and to commence an action within one year ninety days. *See Keating*, 182 F. Supp. 2d at 291.

Plaintiff makes no claim that he served a notice of claim on the County. Rather he claims that Defendants were placed on notice through his grievance filings and his NYSDHR/EEOC complaint. According to Plaintiff "[b]etween 2001 and 2006 there was a flurry of correspondence between or addressed to Defendants regarding the underlying issues of race discrimination." Pl.'s Mem. in Opp. at 34.

With respect to the grievance, as it was brought in 2001 it cannot serve as notice of events occurring thereafter. As to events occurring prior thereto, this action was not

commenced within the required one year and ninety days. With respect to the NYSDHR/EEOC complaint, the record before this Court indicates that the notice thereof sent to Defendants is dated November 20, 2006, more than ninety days after the last date for which factual specification is provided in the NYSDHR/EEOC complaint. Thus, assuming arguendo the NYSDHR/EEOC complaint satisfies the content requirements of County Law § 52, it fails to meet the timeliness requirement. The motion for summary judgment on the NYSHRL retaliation claim is granted for failure to comply with County Law § 52(1).

### Conclusion

For the reasons set forth above, Defendants' motion for summary judgment is decided as follows: (1) with respect to the race and color discrimination claims asserted pursuant to Title VII, § 1981, NYSHRL, and Title VI the motion is granted; (2) with respect to the Title VII and Title VI retaliation claims granted as to Kampe, Goldfarb, HR Commission and Civil Service Commission but denied as to the County; (3) granted as to § 1983; (4) granted as to § 1985; (4) granted as to FLSA claims; (5) denied as to breach of contract claims; and (6) granted as to NYSHRL retaliation claims.

**SO ORDERED.**

Dated: Central Islip, New York
February 18, 2010

/s/ _____
Denis R. Hurley
Senior District Judge